# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

CITY OF LA CROSSE, individually and on behalf of all others similarly situated,

        Plaintiff,

    v.

OSHKOSH CORPORATION, PIERCE MANUFACTURING, INC., REV GROUP, INC., ROSENBAUER AMERICA, LLC, and FIRE APPARATUS MANUFACTURERS' ASSOCIATION,

        Defendants.

Case No. 1:25-cv-01252-BBC

Hon. Byron B. Conway

---

IN RE: DIRECT PURCHASER FIRE APPARATUS ANTITRUST LITIGATION

Case No. 1:25-cv-01543-BCC

Hon. Byron B. Conway

---

CITY OF ONALASKA, individually and on behalf of all others similarly situated,

        Plaintiff,

    v.

OSHKOSH CORPORATION, REV GROUP, INC., ROSENBAUER AMERICA, LLC, and FIRE APPARATUS MANUFACTURERS' ASSOCIATION,

        Defendants.

Case No. 1:25-cv-01717-BBC

Hon. Byron B. Conway

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION
TO CONSOLIDATE CASE NOS. 1:25-CV-01252-BBC, 1:25-CV-01717-BBC,
AND DIRECT PURCHASER ANTITRUST ACTIONS, NO. 1:25-CV-01543-BBC**

Defendants, Oshkosh Corporation ("Oshkosh"), Pierce Manufacturing, Inc. ("Pierce"), REV Group, Inc. ("REV Group"), Rosenbauer America, LLC ("Rosenbauer"), and Fire Apparatus Manufacturers' Association ("FAMA") (collectively, "Defendants"), submit this memorandum in support of their joint motion to consolidate case nos. 1:25-cv-01252-BBC (the "*La Crosse*" action), and 1:25-cv-01717-BBC (the "*Onalaska*" action) with the recently consolidated "Direct Purchaser Antitrust Actions," case no. 1:25-cv-01543-BBC, into a single action at docket no. 1:25-cv-01252-BBC—the lowest-number docket—pursuant to Federal Rule of Civil Procedure 42(a)(2).

**INTRODUCTION**

Defendants are two manufacturers of fire trucks sold in the United States, two parent companies of fire truck manufacturers, and a trade association for manufacturers of fire trucks and related equipment. In five separate cases filed in this judicial District, five different Plaintiffs have brought antitrust claims against Defendants arising out of the same alleged conspiracies to increase the price of fire trucks by (i) restraining the production of fire trucks and (ii) exchanging competitively sensitive information. These five cases all involve nearly the same Defendants,[1] nearly identical factual allegations copied from the original *La Crosse* complaint, and substantively similar antitrust claims brought under federal and/or state antitrust law. The Court recently consolidated three of the cases—*Augusta*, *Newstead*, and *Philadelphia*—into a single action titled "*In re: Direct Purchaser Fire Apparatus Antitrust Litigation*" at docket no. 1:25-cv-01543-BBC pursuant to those Plaintiffs' motion to consolidate and appoint interim lead counsel. *See* ECF No. 19, *City of Augusta v. Oshkosh Corp., et al.*, No. 1:25-cv-01543-BBC (the "*Augusta*" action); ECF No. 14, *The Newstead Fire Co., Inc. v. Oshkosh Corp., et al.*, No. 1:25-cv-01693-BBC (the "*Newstead*" action); ECF No. 12, *City of Philadelphia v. Oshkosh Corp., et al.*, No. 1:25-cv-

---

[1] The *Onalaska* complaint does not name Oshkosh's subsidiary Pierce as a Defendant.

01801-BBC (the "*Philadelphia*" action). Defendants now move to consolidate the two remaining *La Crosse* and *Onalaska* cases with those consolidated Direct Purchaser Antitrust Actions into a single action pursuant to Rule 42(a)(2).

A tool for promoting efficient case management and administrative convenience, consolidation is appropriate where cases present common issues of fact or law and consolidation will streamline the litigation without causing undue prejudice. These criteria are readily satisfied here. Given their nearly identical factual allegations and claims, the cases all present numerous common issues of fact and law; consolidation will streamline the proceedings and avoid the inefficiency of litigating nearly identical cases on separate tracks; and there is no risk of prejudice to any party because the cases are all in their infancy.

The Court recently consolidated the *Augusta*, *Newstead*, and *Philadelphia* actions into a single action at docket no. 1:25-cv-01543-BBC for similar reasons. Those Direct Purchaser Antitrust Actions present nearly identical questions of law and fact as the *La Crosse* and *Onalaska* actions: all involve substantively identical antitrust claims based on the same set of facts, regardless of purchaser class. In fact, the Direct Purchaser Antitrust Plaintiffs concede that their actions are related to the *La Crosse* action. Consolidation of the Direct Purchaser Antitrust Actions with the *La Crosse* and *Onalaska* actions will further streamline the actions from three separate tracks to one. And consolidation will not prejudice the different purchaser classes because any differences can be addressed by filing separate consolidated complaints. Indeed, courts routinely consolidate antitrust actions involving different classes of purchasers. *See infra* p. 11.

Accordingly, the Court should grant Defendants' motion and consolidate the *La Crosse* and *Onalaska* actions with the already consolidated Direct Purchaser Antitrust Actions at docket no. 1:25-cv-01252-BBC, under the name *In re: Fire Apparatus Antitrust Litigation*.

Plaintiff City of La Crosse filed its class action complaint on August 20, 2025. *See* ECF No. 1, *City of La Crosse v. Oshkosh Corp. et el.*, No. 1:25-cv-01252-BBC ("*La Crosse* Compl."). The *La Crosse* Complaint alleges that the "Manufacturer Defendants"—REV Group, Oshkosh and its wholly owned subsidiary, Pierce, and Rosenbauer—have conspired to increase fire truck prices and perpetuate backlogs for new fire trucks. *Id.* ¶ 3. The *La Crosse* Complaint further alleges that the Manufacturer Defendants "have perpetuated their conspiracy in part through [FAMA]," a trade association for fire apparatus manufacturers that allegedly "colludes with the Manufacturer Defendants to enable an information exchange through statistical reports and by organizing twice-yearly in-person meetings." *Id.* ¶¶ 4, 25, 57.

Based on these allegations, the *La Crosse* Complaint includes two counts under Section 1 of the Sherman Act, 15 U.S.C. § 1. Count I alleges that, since 2016, Defendants have engaged in a conspiracy to restrain the production of fire trucks, enabling the Manufacturer Defendants to raise the price of fire trucks. *Id.* ¶¶ 131-36. Count II alleges that, since 2016, Defendants have engaged in a conspiracy to exchange competitively sensitive information through FAMA that also has enabled the Manufacturer Defendants to raise the price of fire trucks. *Id.* ¶¶ 137-49. In addition, the *La Crosse* Complaint includes state-law claims for violation of the Wisconsin Antitrust Law and common law unjust enrichment, both of which are also based on the same alleged conspiracies and same factual allegations. *Id.* ¶¶ 150-57. For both Sherman Act claims, the *La Crosse* Complaint alleges that the relevant product market is all fire trucks, and the relevant geographic market is the United States. *Id.* ¶¶ 90-93. The *La Crosse* Complaint asserts claims on behalf of a proposed nationwide class consisting of "[a]ll local or municipal government entities with fire departments

4

that purchased fire trucks from Manufacturer Defendants in the United States from January 1, 2016 through the present," as well as a Wisconsin Class limited to purchases in Wisconsin. *Id.* ¶ 118.

In the weeks after the City of La Crosse filed its complaint, four different Plaintiffs subsequently filed copycat complaints in this District:

1) On October 7, 2025, the City of Augusta filed suit. *See* Ex. A, ECF No. 1, *City of Augusta v. Oshkosh Corp., et al.*, No. 1:25-cv-01543-BBC (the "*Augusta* Compl.").

2) On October 31, 2025, the Newstead Fire Company, Inc. filed suit. *See* Ex. B, ECF No. 1, *The Newstead Fire Co., Inc. v. Oshkosh Corp., et al.*, No. 1:25-cv-01693-BBC (the "*Newstead* Compl.").

3) On November 4, 2025, the City of Onalaska filed suit. *See* Ex. C, ECF No. 1, *City of Onalaska v. Oshkosh Corp., et al.*, No. 1:25-cv-01717-BBC (the "*Onalaska* Compl.").

4) On November 14, 2025, the City of Philadelphia filed suit. *See* Ex. D, ECF No. 1, *City of Philadelphia v. Oshkosh Corp., et al.*, No. 1:25-cv-01801-BBC (the "*Philadelphia* Compl.").[2]

Each of those four Plaintiffs designated its action as related to the original *La Crosse* action on its civil cover sheet.[3]

Indeed, the *Augusta*, *Newstead*, *Onalaska*, and *Philadelphia* Complaints are virtually identical to the original *La Crosse* Complaint. They all allege that the Manufacturer Defendants

---

[2] A sixth copycat complaint has since been filed in the District of Massachusetts. *See City of Revere v. Oshkosh Corp. et al.*, No. 1:25-cv-13462 (D. Mass.).

[3] *See* Ex. E, ECF No. 1-1, *City of Augusta v. Oshkosh Corp., et al.*, No. 1:25-cv-01543-BBC; Ex. F, ECF No. 1-1, *The Newstead Fire Co., Inc. v. Oshkosh Corp., et al.*, No. 1:25-cv-01693-BBC; Ex. G, ECF No. 1-1, *City of Onalaska v. Oshkosh Corp., et al.*, No. 1:25-cv-01717-BBC; Ex. H, ECF No. 1-1, *City of Philadelphia v. Oshkosh Corp., et al.*, No. 1:25-cv-01801-BBC.

have conspired since 2016 to increase fire truck prices and perpetuate lengthy backlogs for new fire trucks, and have effectuated their conspiracy in part by exchanging information through FAMA. *Augusta* Compl. ¶¶ 3-4; *Newstead* Compl. ¶¶ 3-5; *Onalaska* Compl. ¶¶ 3-6; *Philadelphia* Compl. ¶¶ 2-3. And they all bring two claims under Section 1 of the Sherman Act challenging the same alleged conspiracies to restrain production and share competitively sensitive information. *Augusta* Compl. ¶¶ 132-50; *Newstead* Compl. ¶¶ 127-40; *Onalaska* Compl. ¶¶ 158-70; *Philadelphia* Compl. ¶¶ 131-49. They all also define the same relevant markets. *Augusta* Compl. ¶¶ 91-94; *Newstead* Compl. ¶ 33; *Onalaska* Compl. ¶¶ 33, 38; *Philadelphia* Compl. ¶¶ 90-93. And they all assert claims on behalf of a proposed nationwide class. *Augusta* Compl. at 1; *Newstead* Compl. ¶ 117; *Onalaska* Compl. ¶ 138; *Philadelphia* Compl. ¶ 118.

The four copycat complaints all share many more specific allegations with the *La Crosse* Complaint as well, often in nearly identical terms. For example, they all allege that the Manufacturer Defendants have consolidated the market through the same series of 'roll-up' acquisitions. *La Crosse* Compl. ¶¶ 34-52; *Augusta* Compl. ¶¶ 37-55; *Newstead* Compl. ¶¶ 39-57; *Onalaska* Compl. ¶¶ 45-61; *Philadelphia* Compl. ¶¶ 34-52. They all allege that the Manufacturer Defendants seek to cooperate rather than compete with each other based on the same series of statements. *La Crosse* Compl. ¶¶ 53-56; *Augusta* Compl. ¶¶ 56-59; *Newstead* Compl. ¶¶ 58-62; *Onalaska* Compl. ¶¶ 62-65; *Philadelphia* Compl. ¶¶ 53-56. They all allege that demand for fire trucks "spiked" between 2020 and 2022 as municipal coffers became flush with COVID relief funds, and that the Manufacturer Defendants' production has not kept pace with demand. *La Crosse* Compl. ¶¶ 68-69; *Augusta* Compl. ¶¶ 71-72; *Newstead* Compl. ¶¶ 77-78; *Onalaska* Compl. ¶¶ 81-82; *Philadelphia* Compl. ¶¶ 68-69. They all allege that the market is characterized by the same "high barriers to entry." *La Crosse* Compl. ¶¶ 95-98; *Augusta* Compl. ¶¶ 96-99; *Newstead*

Compl. ¶ 38; *Onalaska* Compl. ¶¶ 41-42; *Philadelphia* Compl. ¶¶ 95-98. And they all allege the same type of antitrust injury. *La Crosse* Compl. ¶¶ 128-30; *Augusta* Compl. ¶¶ 129-31; *Newstead* Compl. ¶¶ 134-37; *Onalaska* Compl. ¶¶ 41-42; *Philadelphia* Compl. ¶¶ 128-30.

By contrast, the operative differences between the complaints are minimal. The primary difference is merely how Plaintiffs purchased fire trucks. The *Augusta*, *Newstead*, and *Philadelphia* Complaints allege that these Plaintiffs purchased fire trucks ***directly*** from the Manufacturer Defendants or their subsidiaries, whereas the *Onalaska* Complaint alleges trucks were purchased ***indirectly***, and the *La Crosse* Complaint does not specify between direct and indirect purchases. *See La Crosse* Compl. ¶ 11; *Augusta* Compl. ¶ 15; *Newstead* Compl. ¶ 15; *Onalaska* Compl. ¶ 17; *Philadelphia* Compl. ¶ 10. Likewise, the *Augusta*, *Newstead*, and *Philadelphia* Complaints propose a class specific to direct purchasers of fire trucks, whereas the class definitions in the *La Crosse* and *Onalaska* Complaints do not distinguish between direct and indirect purchasers. *See La Crosse* Compl. ¶ 118; *Augusta* Compl. at 1; *Newstead* Compl. ¶ 117; *Onalaska* Compl. ¶ 138; *Philadelphia* Compl. ¶ 118. The *Augusta* and *Philadelphia* Complaints also do not bring any derivative state-law claims or propose any state-specific classes, whereas the *Newstead* Complaint brings a claim under New York law, without proposing a state-specific class, and the *Onalaska* Complaint purports to bring claims under the laws of many states and proposes a state-law class consisting of customers who made purchases in those states. *See Newstead* Compl. ¶¶ 141-44; *Onalaska* Compl. ¶¶ 138, 171-226. The *Onalaska* Complaint also does not name Oshkosh's wholly owned subsidiary Pierce as a defendant.

On November 20, 2025, the *Augusta*, *Newstead*, and *Philadelphia* Plaintiffs filed a joint motion to consolidate only those three so-called Direct Purchaser Antitrust Actions—but not the *La Crosse* or *Onalaska* actions—at docket no. 1:25-cv-01543-BBC and to appoint interim co-lead

counsel and interim liaison counsel for the direct purchaser class. *See* ECF No. 14, *City of Augusta v. Oshkosh Corp., et al.*, No. 1:25-cv-01543-BBC; ECF No. 3, *The Newstead Fire Co., Inc. v. Oshkosh Corp., et al.*, No. 1:25-cv-01693-BBC; ECF No. 2, *City of Philadelphia v. Oshkosh Corp., et al.*, No. 1:25-cv-01801-BBC. The motion did not acknowledge that all five cases are based on nearly identical factual allegations from the original *La Crosse* action and bring substantively identical claims. The Court granted the motion on November 25. *See* ECF No. 19, *City of Augusta v. Oshkosh Corp., et al.*, No. 1:25-cv-01543-BBC; ECF No. 14, *The Newstead Fire Co., Inc. v. Oshkosh Corp., et al.*, No. 1:25-cv-01693-BBC; ECF No. 12, *City of Philadelphia v. Oshkosh Corp., et al.*, No. 1:25-cv-01801-BBC.

## ARGUMENT

The antitrust actions pending against Defendants in this Court present a quintessential case for consolidation under Federal Civil Procedure Rule 42(a)(2). All of these actions assert the same Sherman Act claims against largely the same Defendants based on virtually the same factual allegations. Consolidation will therefore avoid needless inefficiency and costs that would result if the actions were to proceed on separate tracks, and it will not prejudice any party or purchaser class. All of the actions—and not just the three recently consolidated Direct Purchaser Antitrust Actions—should therefore be consolidated into a single action.[4]

Rule 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R.

---

[4] Defendants reserve the ability to seek further consolidation of the Complaints depending on how Plaintiffs collectively propose to file their consolidated complaints once the Court rules on this Motion and any forthcoming motion to appoint interim lead counsel for a different putative class of Plaintiffs.

Civ. P. 42(a). "In deciding whether to consolidate cases, courts exercise broad discretion and try to consolidate where possible." *SJ Props. Suites, BuyCo, EHF v. Dev. Opportunity Corp.*, 2009 WL 3790009, at *1 (E.D. Wis. Nov. 12, 2009) (citing *United States v. Knauer*, 149 F.2d 519, 520 (7th Cir. 1945)). "Consolidation is preferred to avoid unnecessary duplication of efforts in related cases and promote judicial economy and efficiency." *Id.* (citing *Equal Employment Opportunity Comm'n v. G-K-G, Inc.*, 39 F.3d 740, 745 (7th Cir.1994)). The Court "need not find that common questions of law or fact predominate, only that they exist and that consolidation will prove beneficial." *In re Advoc. Aurora Health Pixel Litig.*, 2023 WL 2787985, at *1 (E.D. Wis. Apr. 5, 2023) (quotation omitted). Thus, "[w]hen common questions of law or fact are present, cases should be consolidated if consolidation will streamline the litigation without causing the parties undue prejudice." *Id.* (quotation omitted); *see also Seguro de Servicio de Salud de Puerto Rico v. McAuto Sys. Grp., Inc.*, 878 F.2d 5, 8 (1st Cir. 1989) ("A motion for consolidation will usually be granted unless the party opposing it can show demonstrable prejudice." (quotation omitted)).

The criteria for consolidation are readily satisfied as to combine the *La Crosse* and *Onalaska* cases with the Direct Purchaser Antitrust Actions, regardless of whether they involve just direct purchasers, both direct and indirect purchasers, or only indirect purchasers.

**The Actions Present Common Issues.** All actions present significant common issues of law and fact. The Complaints in all of the actions allege the same conspiracies to reduce the production of fire trucks and to exchange competitively sensitive information through FAMA since 2016; assert the same violations of federal antitrust law under Section 1 of the Sherman Act; allege the same relevant markets; and allege the same type of antitrust injury. Furthermore, the alleged conspiracies are based on virtually identical factual allegations relating to Defendants' conduct and the price and production of fire trucks. All Complaints name REV Group, Oshkosh,

Rosenbauer, and FAMA as Defendants, and four name Pierce. All Complaints propose substantially similar classes as well. Acknowledging this substantial overlap, all four copycat actions designated the *La Crosse* action as related on their civil cover sheets. *See* Exs. E-H. And the Court has already found that the *Augusta*, *Newstead*, and *Philadelphia* actions present common issues of law and fact in consolidating those actions. Given that the *La Crosse* and *Onalaska* actions are substantially similar, all of these actions clearly involve a "common core of factual questions and legal issues" that easily satisfies the threshold requirement for consolidation. *See SJ Props.*, 2009 WL 3790009, at *1 (consolidating cases involving "the same construction project" and "many of the same parties"); *Ahnert v. Emps. Ins. Co. of Wausau*, 2017 WL 1251113, at *2 (E.D. Wis. Mar. 31, 2017) (same where cases involved a common underlying incident and "many of the same defendants"); *see also Wagner v. Spectrum Brands Legacy, Inc.*, 2019 WL 2443036, at *1 (W.D. Wis. June 12, 2019) ("The court concludes that consolidation is appropriate here because both cases are based on the same alleged conduct . . . , the same legal theories . . . , and similar proposed classes.").

This holds true for all of the cases even if the *Augusta*, *Newstead*, and *Philadelphia* actions purportedly involve only direct purchasers. All of the Complaints allege the same conspiracies during the same time period against nearly all the same Defendants; they feature virtually identical allegations relating to the conspiracies copied from the original *La Crosse* Complaint; they involve the same alleged product and geographic markets and the same alleged antitrust injuries; and they assert substantively identical antitrust claims. Thus, all Plaintiff groups must ultimately prove the same elements based on the same evidence. And again, the purported direct purchaser Plaintiffs have already acknowledged that their actions are related to the *La Crosse* action. Exs. E-F, H. Because consolidation requires only that "common questions of law or fact . . . exist," not that the

actions present identical issues, identical claims, or identical classes in all respects, the mere distinction between just direct purchasers and both direct and indirect purchasers—or even solely indirect purchasers—does not stand in the way of consolidation. *See In re Advoc. Aurora*, 2023 WL 2787985, at *1 (quotation omitted). On the contrary, courts routinely consolidate antitrust actions involving direct and indirect purchasers. *See, e.g.*, *Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, 85 F. Supp. 3d 1007, 1009 (E.D. Wis. 2015); *In re Turkey Antitrust Litig.*, 642 F. Supp. 3d 711, 715 (N.D. Ill. 2022); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 919 (N.D. Ill. 2009); *In re Granulated Sugar Antitrust Litig.*, 2025 WL 3012238, at *13 (D. Minn. Oct. 15, 2025); *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1058 (N.D. Cal. 2015); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1183 (N.D. Cal. 2009).

**Consolidation Will Promote Efficiency and Avoid Unnecessary Costs.** A primary purpose of consolidation is "to avoid unnecessary duplication of efforts in related cases and promote judicial economy and efficiency." *SJ Props.*, 2009 WL 3790009, at *1. Consolidation here achieves this purpose. Given the significant factual and legal overlap between the actions, Defendants anticipate that the parties will raise numerous common arguments and defenses in all cases and that any discovery shall be nearly, if not entirely, identical. If the cases are not consolidated, the parties will need to engage in duplicative litigation on the same issues of fact and law, which this Court will be required to oversee on multiple parallel dockets, resulting in needless inefficiency. Without consolidation, for example, the parties would need to brief, and the Court would need to resolve multiple separate motions to dismiss, raising the same arguments based on substantially the same allegations. To the extent the motions to dismiss are not granted, the Court would need to manage overlapping discovery in multiple tracks, in which the parties would be subjected to multiple rounds of document requests, interrogatories, and depositions on the same

11

topics; nonparties would be subject to multiple subpoenas and depositions; experts would be required to produce multiple overlapping reports and testimony; and the same discovery disputes would likely be briefed multiple times. The parties would also need to brief, and the Court to decide, multiple separate motions for class certification and motions for summary judgment, again raising substantially the same factual and legal issues. And separate trials would entail putting on the same documentary and testimonial evidence multiple times over. Consolidation eliminates these inefficiencies by streamlining the cases into one action, reducing costs for the parties and fostering the interests of judicial economy and efficiency.

Consolidating only the Direct Purchaser Antitrust Actions would create the same extraordinary inefficiencies highlighted above. That leaves three separate actions requiring three rounds of duplicative discovery, dispositive motions, and even three trials covering the same factual and legal issues. Even just two separate actions would entail needless inefficiency. It is therefore most efficient for the Court and the parties to consolidate all of these cases into a single action so that the parties can litigate the sufficiency of the allegations together, the cases can proceed through discovery (to the extent they survive a motion to dismiss) together, and the Court can decide in one class certification proceeding whether any classes should proceed to trial. Mere coordination between the Direct Purchaser Antitrust Actions and the *La Crosse* and *Onalaska* cases would not achieve nearly the same efficiencies as consolidation.

**Consolidation Will Not Prejudice the Parties.** Consolidation being "primarily about administrative convenience" to enable "unified docketing, consistent scheduling, and better case management," it presents no basis for prejudice to any party. *See One Wisconsin Inst., Inc. v. Thomsen*, 2020 WL 4887026, at *2 (W.D. Wis. Aug. 20, 2020). All actions are at their procedural inception, so no party will obtain an unfair advantage or suffer undue delay. Moreover,

consolidation will not compromise any Plaintiffs' rights or remedies or prevent Plaintiffs from raising issues that affect only certain claims. *Id.* at \*2; *see also Hall v. Hall*, 584 U.S. 59, 67 (2018).

Once again, that the Direct Purchaser Antitrust Actions only seek to certify a direct purchaser class does not show otherwise. Consolidation avoids any prejudice to different putative classes of purchasers by "preserving the distinct identities" of each set of actions. *See Hall*, 584 U.S. at 67. That courts routinely consolidate direct and indirect purchaser antitrust actions, as noted above, demonstrates there is no risk of prejudice in consolidating such actions. *See, e.g.*, *Fond Du Lac*, 85 F. Supp. 3d at 1009; *In re Turkey*, 642 F. Supp. 3d at 715; *In re Potash*, 667 F. Supp. 2d at 919; *In re Granulated Sugar*, 2025 WL 3012238, at \*13; *In re Capacitors*, 106 F. Supp. 3d at 1058; *In re TFT-LCD*, 599 F. Supp. 2d at 1183. Any differences between the classes of purchasers can be addressed by filing separate full or short form consolidated complaints on behalf of each class. *See, e.g.*, *In re Turkey*, 642 F. Supp. 3d at 715; *In re Potash*, 667 F. Supp. 2d at 919.

The standard practice of consolidating direct and indirect purchaser actions into one action makes equal sense here for all the reasons set forth above. Accordingly, the Court should further consolidate the Direct Purchaser Antitrust Actions with the *La Crosse* and *Onalaska* actions at docket no. 1:25-cv-01252-BBC, the lowest numbered of the associated cases. *See* L.R. 42(b).

<b>CONCLUSION</b>

For the foregoing reasons, Defendants respectfully request that the Court enter an order consolidating case nos. 1:25-cv-01252-BBC and 1:25-cv-01717-BBC with the consolidated Direct Purchaser Antitrust Actions, no. 1:25-cv-01543-BBC, at docket no. 1:25-cv-01252-BBC (the lowest numbered docket) under the name *In re: Fire Apparatus Antitrust Litigation*.

Dated: December 2, 2025                        Respectfully submitted,


                                                s/ *Daniel T. Flaherty*

Daniel T. Flaherty (Bar No. 1011357)
Godfrey & Kahn S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
(414) 273-5198
dflaherty@gklaw.com

Reid Schar (Bar No. 6243821)
Jenner & Block LLP
525 Market Street, 29th Floor
San Francisco, CA 94105
(628) 267-6800
rschar@jenner.com

Douglas E. Litvack (Bar No. 1024973)
Jariel A. Rendell (Bar No. 1027023)
Jenner & Block LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 637-6357
dlitvack@jenner.com
jrendell@jenner.com

Jacob P. Wentzel (Bar No. 6333530)
Jenner & Block LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
jwentzel@jenner.com

*Counsel for Defendants Oshkosh Corporation
and Pierce Manufacturing, Inc.*

s/ *Daniel J. Vaccaro*
Daniel J. Vaccaro (Bar No. 1018037)
Joseph L. Olson (Bar No. 1046162)
Michael Best & Friedrich LLP
790 North Water Street, Suite 2500
Milwaukee, WI 53202
(414) 271-6560
djvccaro@michaelbest.com
jlolson@michaelbest.com
ena.allen@michaelbest.com

Arthur J. Burke (Bar No. 1175568)
Davis Polk & Wardwell LLP

14

450 Lexington Ave
New York, NY 10017
(212) 450-4000
arthur.burke@davispolk.com

Mari Grace (Bar No. 90009858)
Sean Stefanik (Bar No. 5637913)
Davis Polk & Wardwell LLP
1050 17th Street, NW
Washington, DC 20036
(202) 962-7000
mari.grace@davispolk.com
sean.stefanik@davispolk.com

*Counsel for Defendant REV Group, Inc.*

s/ *David J. Turek*
David J. Turek (Bar No. 1035356)
Joshua S. Greenberg (Bar No. 1107959)
Gass Turek LLC
241 North Broadway, Suite 300
Milwaukee, WI 53202
(414) 224-3445
turek@gassturek.com
greenberg@gassturek.com

Ashley B. Eickhof (Bar No. 307143)
Baker & McKenzie LLP
815 Connecticut Ave NW
Washington, DC 20006
(202) 452-7000
ashley.eickhof@bakermckenzie.com

*Counsel for Defendant Rosenbauer America,*
*LLC*

s/ *John P. Loringer*
John P. Loringer (Bar No. 1059778)
Andrew Scarpace (Bar No. 1104777)
Wilson Elser Moskowitz Edelman & Dicker
LLP
555 East Wells Street, Suite 1730
Milwaukee, WI 53202
(414) 292-3019
john.loringer@wilsonelser.com

*Counsel for Defendant Fire Apparatus Manufacturers' Association*