UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

| | | |
|---|---|---|
| IN RE: FIRE APPARATUS AND | ) | Case No. 26-MD-3179 |
| ANTITRUST LITIGATION | ) | Green Bay, Wisconsin |
| | ) | May 13, 2026 |
| | ) | 9:31 a.m. |

---

TRANSCRIPT OF TELEPHONE CONFERENCE HEARING
BEFORE THE HONORABLE WILLIAM C. GRIESBACH
UNITED STATES DISTRICT JUDGE

APPEARANCES:

**For the Plaintiffs:**

Catherine Simonsen, Nico Gurian, Lindsay Stevens, Jason Julius, and Andrew Skwierawski for the Direct Action Plaintiffs

Jason J. DePalma and Laura K. Mummert (City of Chelsea, Borough of Roseland)

David Weber (City of Liberty, Missouri)

Jeffrey A. Barrack and Danielle M. Weiss (City of Philadelphia)

Michael J. Flannery and Evelyn Riley (The Newstead Fire Co., Inc., The Metropolitan Government of Nashville & Davidson County)

Gregory P. Hansel and Michael Smith (City of Augusta)

Joseph R. Saveri and David Seidel (City of Revere)

Beth J. Kushner and Christopher E. Avallone (liaison counsel for the putative DPP class)

Adam J. Zapala, Elizabeth T. Castillo, and Christian S. Ruano (City of Arcadia)

James Robertson Martin and Jennifer Duncan Hackett (Unified Government of Kansas City, Kansas and Wyandotte County)

Garrett Heilman (City of Rochester, New York)

George Zelcs, Daniel Epstein, and Labeat Rrahmani (City of Fullerton)

Joseph Newbold and Natalie Finkelman (City of Milwaukee)

Kevin Landau (Commack Fire District)

Milena Lai and Casey Verville (City of Ann Arbor, City of Middletown, City of Ridgeland)

Dan Gustafson, Dan Hedlund, Joshua Rissman, Frances Mahoney-Mosedale, and Gabrielle Kolb (City of Onalaska)

Steve Berman, Stephanie Verdoia, Moses Jehng, Erin Dickinson, and Ben Kaplan (City of La Crosse, Claverack Fire District)

**For the Defendants:**

Mari Grace and Joseph Olson (REV Group Defendants)

Chris Cowan (Durango Fire Protection District)

Reid Schar and Dan Flaherty (Oshkosh Corporation, Pierce Manufacturing, Inc., Maxi-Metal, Inc.)

Leo Caseria and Benjamin L. Price (Boise Mobile Equipment, Inc., BME Fire Trucks, LLC)

Ashley Eickhof and David Turek (Rosenbauer America, LLC, Rosenbauer Minnesota, LLC, Rosenbauer South Dakota, LLC)

Ed Duffy and Dan Conley (AIP CF IV, LLC, AIP CHC Investors, LLC, AIP, LLC, AIP/CHC Holdings, LLC, American Industrial Partners Capital Fund IV (Parallel) LP, American Industrial Partners Capital Fund IV LP)

Noah Beckert-McGirr (Conrad Fire Equipment)

John P. Loringer (Fire Apparatus Manufacturers Association)

Jessica Puetz (Reliant Fire Apparatus, Inc.)

Marianne Robak (Siddons Martin)

U.S. Official Transcriber: THOMAS A. MALKIEWICZ, RMR, CRR
Proceedings recorded by electronic recording, transcript produced by computer aided transcription.
**TRANSCRIPT ORDERS:** Thomas_Malkiewicz@wied.uscourts.gov

TRANSCRIPT OF PROCEEDINGS

(Transcribed From Audio Recording)

THE CLERK: The court calls case number 26-MD-3179 regarding the Fire Apparatus and Antitrust Litigation, and the clerk has noted all of the appearances pursuant to the E-mails received by counsel at the direction of the notice of hearing.

THE COURT: So we will not go through the appearances. Mara, can you give me some idea of how many attorneys are on the line?

THE CLERK: We have 66 people on the call.

THE COURT: Okay. Well, good morning, everyone. What I -- I've gone through the status reports, and, you know, it appears that there's general agreement that this case should proceed on three separate tracks. The direct act -- direct purchaser plaintiff class action is one class, the indirect purchaser plaintiff class actions are another track, and then the direct nonclass actions, which are a third track, and my sense is that there's general agreement that the case needs to proceed on -- on three tracks rather than one simply because the position of either the plaintiffs or the claims are somewhat different.

The indirect plaintiffs, of course, are -- have a different standing as to the defendants, the manufacturing defendants, than the direct purchase plaintiffs, and then from what I can understand from the status reports, it appears that

the nonclass action plaintiffs are asserting different claims than the direct class action -- direct purchase class action plaintiffs are asserting.

Is that generally correct that you're in agreement that the case needs to proceed on those three tracks? And please identify yourself by name when you speak, because obviously we're on a telephone.

MR. FLANNERY: Good morning, Your Honor --

MS. SIMONSEN: Good morning, Your Honor. Catherine Simonsen for the --

MR. FLANNERY: Sorry.

THE COURT: Miss --

MS. SIMONSEN: Your Honor, Catherine Simonsen --

THE COURT: Okay. Miss Simonsen --

MS. SIMONSEN: -- of Simonsen Sussman for the --

THE COURT: Okay. Miss Simonsen, go ahead. Tell me your view, and then the next person should speak. Okay. Go ahead.

MS. SIMONSEN: Thank you, Your Honor. I -- My firm, Simonsen Sussman, along with Baron & Budd represent all of the 16 direct action plaintiffs, and we agree fully with Your Honor's assessment. There are substantial differences across the three cases.

While we are happy and looking forward to working together with the IPP counsel and the DPP counsel, given that we do not

assert a conspiracy and we focus the complaints on the Clayton Act Section 7, mergers and acquisitions, as well as pierced parts conduct and named different defendants, we think it's most appropriate to have the three tracks. We agree with Your Honor.

THE COURT: How about a representative of the direct purchaser class action, the DPP? What's your view?

MR. FLANNERY: Good morning. Michael Flannery for the direct purchaser plaintiffs.

We generally agree that as the cases have lined up, there are three separate tracks, the two class tracks that you identified and the individual actions. So we think that for purposes of the class cases certainly in cooperation with the individual actions that there should be coordination and consolidation for certain issues. We generally agree with that position and think that Your Honor has it exactly right.

THE COURT: And how about indirect purchaser plaintiff class action?

MR. BERMAN: Good morning, Your Honor --

MS. HACKETT: Your Honor, this is Jennifer Hackett --

MR. BERMAN: -- on behalf of the City of La Crosse --

THE COURT: Go ahead. Identify yourself, the first voice that I heard.

MR. BERMAN: Yes. Steve Berman, Your Honor, the one who filed the first case. We do agree with the three tracks

proposal.

THE COURT: Okay. And -- And as I understand it further, there's general agreement on -- on the representative, the lead counsels for the direct nonclass action and the direct purchaser class actions. The -- The firm of -- The Sussman and Baron & Budd firms, Simonsen Sussman and Baron & Budd, would have -- are representing all 16 of the direct purchaser individual actions and the -- let's see, the same -- the attorneys that Judge Conway appointed to represent the direct action -- or direct purchase plaintiff class actions are -- there's no -- they would continue as well. But there is a dispute over who should represent the indirect class actions, is that correct, from the --

(Multiple speakers)

MS. SIMONSEN: That's correct, Your Honor.

MR. FLANNERY: That's correct.

THE COURT: Okay. Let me ask the -- the defendants if they agree that this case needs to proceed, at least in terms of the filing of the complaint along three tracks with the understanding, of course, that discovery needs to be coordinated so you're not, you know, multiplying or duplicating everything.

MR. SCHAR: Good morning, Your Honor. It's Reid Schar, Jenner Block. I'm counsel for Oshkosh Corp, Pierce, and Maxi-Metal, and for purposes of this morning, I'll speak on

behalf of, I believe, all the defendants except the dealer defendants, and they're recently transferred to the City of Fullerton case on the common issues that you're raising, appreciating that counsel for other defendants are present and they may and ultimately will at certain times want to address the Court on particular issues.

So I think, Your Honor, the way you described it almost perfectly, I think, is -- is our position. We don't have a strong view as to the separate amended complaints that we believe will be forthcoming, and the three tracks makes sense. We're, I think, generally fine with that.

Obviously, we -- we very strongly view for both efficiency purposes and coordination there should be a single, whether you want to call it track or process around discovery, but it will probably not surprise Your Honor we hope never to get to discovery in this case after motion practice, but -- so I think we're generally aligned with Your Honor's view.

THE COURT: Okay.

MR. FLANNERY: Your Honor, Michael Flannery for the direct purchaser plaintiffs. If I might just add one comment?

THE COURT: Yes. Go ahead.

MR. FLANNERY: Yeah. The one -- We expressed this in our -- in our statement to the Court. It's -- There's some concern about the -- the way that the third -- individual cases track is -- is called in the case, mainly because we want to

avoid any confusion under -- under Rule 23 and the 23(g) lead counsel appointments, so the only -- the only problem with the track is just that we think that the use of lead and direct terms can -- could be confusing to absent class members, so we would just ask the Court to consider that issue.

THE COURT: Can you -- Mr. Flannery, can you give me a little more idea of what you're thinking? If you're -- If you're certified, and nobody's certified as a class action at this point, but your concern would be if -- if the class is certified, how would that -- how would that play out with these different classes, these different actions?

MR. FLANNERY: I think it's in terms of nomenclature, Your Honor. We don't have an objection to the Simonsen and Baron & Budd firms wanting to have a title, be that coordinating or some other title. It's really a concern, and you're right, there's no class certified yet, but in the event that they were, we won't want absent class members to be confirmed -- confused, as it were, about who's heading up this particular tracks.

THE COURT: Do you think that concern can be postponed until we get past the pleading stage?

MR. FLANNERY: I -- I -- Probably, Your Honor. I don't think that would be necessarily a problem, although I -- you know, I just -- since it's a threshold issue, I thought we should address it, but I think we can probably do that, Your

Honor.

THE COURT: Okay. Let me ask you, Mr. Flannery, you filed a consolidated complaint in -- in front of Judge Conway's case. Is that the complaint that should be -- Do you see a need for any further amendment of it before it's -- it becomes the consolidated case for the track -- on the track you're lead counsel on?

MR. FLANNERY: Thank you, Your Honor, Michael Flannery for the direct purchaser plaintiffs.

We discussed this literally -- this issue literally yesterday, Your Honor, on the -- in a global meet and confer with all the counsel we could identify to discuss in advance of today what we were going to do, and we discussed this variation.

I think substantively the allegations in the complaint would not change. As we mentioned to defense counsel yesterday, we thought that there might be a need for -- for an amendment by way of, if you will, of interlineation to add a couple of the parties who at the time of the MDL had not been moved in to the case. These are the Massachusetts plaintiff and the Roseland, New Jersey plaintiff. So there might be a slight tweak of the complaint on that basis, but the substance of the complaint would not change, Your Honor.

THE COURT: And how about the -- I -- we don't have a consolidated complaint yet, I believe, on the direct purchaser

plaintiff nonclass action from Simonsen Sussman and Baron & Budd. How -- How much time do you think you would need to file such a complaint?

MS. SIMONSEN: Thank you, Your Honor. Catherine Simonsen, Simonsen Sussman.

We can be prepared to file it within a week. It's really just a consolidation of the -- largely the same allegations across the complaints. We want to make it very easy for Your Honor and the defendants to see what is common across everything. I would say 90 percent of the allegations are common. And then what are the differences, right? Who purchased what and when, which -- who went from a dealer, who, you know, went through a concern co-op? We'll make that all very clear, and that will key up what the defendants want to move on and make it easier for Your Honor. So we're prepared to file that, I would say, within a week.

THE COURT: So how -- how about Mr. Flannery, your group, your track? If you -- If you file an amended complaint or if you're going to consolidate and -- and do a further consolidation, how much time do you think that would take you?

MR. FLANNERY: Your Honor, Michael Flannery for the direct purchaser plaintiffs.

I don't think it would take very much time at all. We talked to defense counsel about meeting and conferring as soon as possible after today about that, and my sense is that it

could be accomplished inside of a week, no longer than that, probably quicker than that, but I wouldn't think it would take much more than that, Your Honor.

THE COURT: Okay. Now, the -- the -- Judge Conway appointed counsel for the indirect purchaser class, or track, and that was -- remind me who that is again?

MR. BERMAN: Your Honor, this is Steve Berman.

THE COURT: Mr. Berman?

MR. BERMAN: Court appointed -- Yes, the Court appointed my firm, Hagens Berman, the Crueger Dickinson firm, and the Gustafson Gluek firm as lead counsel and also appointed a plaintiffs' executive committee.

THE COURT: And you have also filed a consolidated complaint. Does that need to be amended if you're lead counsel?

MR. BERMAN: Oh, we're in the same position, we talked about that among our group, and we came up with a week as well. Largely what we would be doing is adding new cases that have come into the MDL that are indirect and in addition canvassing with those new counsel and listening to their views on -- on the claims, and then ultimately we have to decide as lead counsel whether we agree to adding any -- any new claims or theories, and we certainly want to have a short period of time to consider what they have to say.

THE COURT: You --

MR. BERMAN: A week would do it, I think.

THE COURT: Yeah. And then there's the two -- as I understand it, two firms that wish to be appointed lead counsel, the indirect purchaser track?

MS. HACKETT: Yes, Your Honor. This is Jennifer Hackett.

MS. CASTILLO: Good morning, Your Honor. Elizabeth --

THE COURT: Go ahead.

MS. HACKETT: This is -- This is Jennifer Hackett from Zelle, LLP. We represented the Unified Government of Kansas City, Kansas and Wyandotte County. And we put in a status report saying that we are partnering with Cotchett, who is Elizabeth Castillo, who is the other voice that you heard.

Your Honor, we understand and appreciate the Court's desire to get this case moving quickly and efficiently, and we are not asking to revisit leadership merely because we want to see Zelle and Cotchett's name at the top of the -- the pleadings. We are asking to revisit leadership because we and our clients and other fire departments across the country that we have talked to that are -- that would be class members of the indirect purchaser class see this case as much more than a pure price fixing case, which is the complaint that the -- Judge Conway's interim lead counsel appointment alleges, a pure price fixing case.

We have allegations of unlawful consolidations, which will really restrict -- restrict the competition in this market, things like restricting new fire trucks from being able to be acquired and prices going way up, and so we have added a Clayton Act Section 7 claim for serial acquisitions and monopolization of chasses, which is the most expensive part of a fire truck.

When we learned of the -- the Hagens and Gustafson's intent to file an amended complaint before the MDL hearing, we reached out to counsel and suggested that they wait for the JPML to choose a forum, and then we offered our help to include the facts and legal theories that we believed that should be pursued, and they chose not to do so at that time. So we feel like there are substantive differences among counsel and the complaints that need to be resolved in order to adequately represent all of the interest of the class members.

So, you know, if Your Honor is willing to hear us, we would propose to file our motion for interim leadership very promptly, and we commit to filing those consolidated complaints and aggressive briefing schedules to move things along. We don't believe it's necessary to have a motion to vacate the order for interim counsel as the other group suggests, but if you wish such a motion, we could provide it concurrently.

THE COURT: And you --

MS. CASTILLO: Good morning, Your Honor.

THE COURT: Go ahead. Identify yourself.

MS. CASTILLO: This is Elizabeth -- Sure, this is Elizabeth Castillo with Cotchett Pitre McCarthy.

I just want to add to Miss -- what Miss Hackett said, and we would be prepared to submit a leadership application by the end of the week. We didn't want to do so based on your order asking for just a status report, but we can provide an application to you by the end of the week and then a consolidated complaint within a week of the Court issuing an order on leadership.

THE COURT: And -- Go ahead. Good morning, Your Honor. This is Garrett Heilman of Keller Rohrback. We represent the City of Rochester, New York.

And similarly, you know, we didn't want to file a motion in light of Your Honor's order setting this -- this conference, but we do think that in light of the number of defendants and the complexity of the conduct alleged, a larger leadership team makes sense here.

We reached out to the counsel for the other IDP's after Rochester filed its complaint and didn't hear back. It seems clear from everyone else's filings that we're going to need the Court's guidance here.

We're not trying to push anyone else out of the leadership team or supplant them, just -- just asking to join it because we think we bring a lot to the table as [indiscernible] in our

status report. And, of course, you know, we pride ourselves on working well with others and putting all the very capable plaintiffs in (indiscernible).

THE COURT: It sounds like the indirect plaintiffs are trying to combine the claims of both the direct purchaser plaintiff class action and nonclass action into a action on behalf of the indirect purchasers. Is that -- Am I correct on that, or is it even broader or different than that?

MS. HACKETT: Your Honor, this is Jennifer Hackett, Zelle, LLP again.

And I -- I believe that it is -- it is partly that, but the IPP's -- or the -- the class that we would seek to represent has both the price fixing allegations and also the Section 7 and unlawful monopolization claims.

I think the difference is, Your Honor, that they are -- they are not direct actions, so it's on behalf of a class, and also this is a class of plaintiffs that bought from the dealers rather than directly from the manufacturer, so that's the difference between the class we allege and -- and the direct purchaser class.

But there are some -- there are common issues, which is why we believe that discovery and, you know, working together would not be an issue. And we have been working pretty closely with the direct action purchasers' counsel. We have a good relationship with them.

MR. BERMAN: This is Steve Berman, Your Honor.

The consolidated complaint is on file pursuant to Judge Conway's order. The facts and the legal theories are very similar to what the directs have filed. Again, the only difference is where the plaintiffs bought from. So there is great commonality in the facts.

THE COURT: Are you saying there's commonality as to both the monopolization and the price fixing claims?

MR. BERMAN: There is commonality as to the price fixing claims. I believe we're not bringing a claim that -- I mean, that other counsel have suggested.

THE COURT: Yeah.

MR. BERMAN: We researched it and don't agree with it.

THE COURT: So there really is a dispute among the indirect purchaser group over whether or not the monopolization claims should be a part of their -- their consolidated complaint; is that right?

MS. HACKETT: Yes, Your Honor.

MR. BERMAN: Yes. That's not unusual, Your Honor. I mean, I hate to say this, but it often happens that when there's been a court -- in [indiscernible] -- that other lawyers wanting to get a role as lead counsel come in and assert claims that they claim weren't asserted, that they can say, look, Your Honor, you need us.

I was lead counsel in a very large MDL called the GM ignition switch case, and the exact thing happened. Other lawyers came in and said, look, Mr. Berman didn't bring a RICO claim, and as I explained to Judge Furman in the Southern District of New York, you know, if you, like Judge Conway, looked at the qualifications and decided we were adequate to represent the class, we have to have the authority to decide what claims we should be bringing and the Court has to trust that. And we can't have a situation where throughout the litigation other lawyers say, oh, this -- this lead counsel didn't do this and therefore you need to appoint me.

So, again, we're willing, if there's an appointment, to listen again to the Zelle firm, think about it and perhaps add those claims, but we have to have the authority as lead to decide what's best for the class.

THE COURT: So those claims are part of the -- of one of the tracks here, it sounds like. And it's hard for me to -- You know, I certainly think that all of the firms that I've seen resumes of and that have been appointed as interim lead counsel are certainly very well respected, qualified firms in this area. It's -- The difficulty I have is in assessing whether or not -- I mean, I don't want to see it splintered, I don't want an opt-out. I want to see to the extent we can make this one case, or at least a three track case, keep it together so that the defendants aren't faced with fighting on all kinds

of different -- different tracks.

Counsel for the defendants, representative counsel, what -- what's your view on this aspect? Do you have a view?

MR. SCHAR: Good morning again, Your Honor. Reid Schar on behalf of various defendants.

I don't think that the defendants have a particular view on the indirect class and how Your Honor should -- should address that. I think we strongly agree that there is commonality among the facts throughout all three of the different types of complaints, but beyond that how the structure works, we would defer to Your Honor.

THE COURT: Okay. I think what I'll do is take the following action: Simonsen Sussman and Baron & Budd, I'll appoint them lead counsel on the track of the direct purchaser plaintiff nonclass action. That's pretty much agreed upon. So there -- I will appoint them. If you want to submit a proposed order for that, I'll go ahead and enter it. I'll continue --

MS. SIMONSEN: Thank you, Your Honor.

THE COURT: I'll confirm the appointment of the interim counsel for the -- for the direct plaintiffs' purchaser class action, Judge Conway's order, I'll confirm that and continue their representation in this action.

And then I'm going to withhold ruling on the interim -- on the appointment of the lead counsel for the indirect purchaser class. I will look at what is submitted by the end of the

week.

Let me also, though, suggest that counsel that are seeking lead counsel appointment talk with one another. I think the suggestion that maybe these claims can be joined, maybe we need co-lead counsel, see if you can reach agreement; but otherwise, if you want to submit not just your resumes, but somewhat of an argument as to why you should appoint -- be appointed lead, and I -- I don't think this is so much a merits decision, but it seems to me it's got in part since there was a disagreement over what claims have validity and can be brought. To some extent it seems to me you're raising those issues that perhaps I should address, but in any event, get me something by the end of -- I'll look at what's submitted this week, but something by the end of next week before I make an ultimate decision on that.

So the other -- the other two tracks will, of course, file their complaints. I urge you to do so promptly. You've indicated you can do so within a week, and then I will look forward to the motion practice that from what I understand the defense -- the defendants' lead counsel will be coming on that, and we'll move forward on -- at that stage then.

At this point any -- any questions or any problems or objections to this manner of proceeding?

MR. FLANNERY: Your Honor --

MS. CASTILLO: Your Honor, Elizabeth Castillo --

Elizabeth Castillo with Cotchett Pitre McCarthy, one of the firms that will be moving for lead for the indirects.

I just wanted to ask if you could establish some guidance for the motions in terms of page limits and perhaps no responses or replies just so that all the firms who are moving for lead are on the same page.

THE COURT: How about the filings by the -- next -- next Friday, page limits of 25 pages for the briefs. You can submit your attachments or -- or resumes, firm descriptions, but 25 pages, I think, is more than sufficient. And I think we'll just leave it at simultaneous filings, and I'll look at those rather than go with a response and then a reply.

MS. CASTILLO: Thank you, Your Honor.

MR. FLANNERY: Your Honor, Michael Flannery for the direct purchaser plaintiffs.

THE COURT: Yes.

MR. FLANNERY: I only wanted to raise one other thing. It was something we had talked about at the end of our meet and confer yesterday, and that relates to a Rule 26 meet and confer and conference. I would just like to get Your Honor's guidance. We think that it could be appropriate at this early stage to at least start to talk about those things, but I wanted to get Your Honor's guidance about whether that's appropriate to schedule at this time.

MR. SCHAR: Yeah. Your Honor, it's Reid Schar. May

I speak to that briefly?

THE COURT: Yes, um-hum.

MR. SCHAR: Thank you, Your Honor. A couple of -- of quick things. First, in response to your initial issue around, you know, motion practice generally, I think it's the defendants' very strong position that there should be, you know, a consistent schedule around motion practice, and we're ready to meet and confer on that schedule as soon as the last amended complaint is -- is filed, which sounds like it may be the indirect, but we very much do not want different schedules for motions, for instance, to dismiss and maybe other motions that will be raised here this morning depending upon when a particular amended complaint.

So I just flag that as a scheduling issue to make sure that there -- you know, we hope that there's a line that's unscheduled so the defendants are responding to all motions because we believe there will be consolidated responses. While that process plays -- So I just flagged that.

While that process plays itself out, and appreciating that we will -- you know, the defendants are going to work to coordinate defense responses and hopefully have a coordinated, you know, motion to dismiss practice, and then again, we can meet and confer on that and discuss what that might look like and then bring proposals to Your Honor, I think it's very strongly the defendants' view that we -- that it is premature

to have 26(f), or frankly, any type of discovery at this point because whatever this case looks like, obviously it's the defendants' hope that it's dismissed in its entirety, but even if it's not, I think there's a very strong likelihood that the -- the case is going to change. And so for efficiency perspective having a 26(f) now, it's just going to be repeated again once the motion practice is done, so that's our -- defendants' position on that.

THE COURT: Yeah. Well, I'm not scheduling the case out at this point, so I agree 26(f) or initial disclosures do not apply here at this point. Whatever you want to work out amongst yourselves is fine, but I'm not going to order any discovery or any disclosures from the defense until we get past the pleading stage.

With respect to the timing of the motions to dismiss, I will order that then the last complaint to be filed will trigger the duty to respond with an answer, motions to dismiss, or however the defendants choose to do so. I think that's consistent with the whole idea of the MDL that rather than a piecemeal approach in multiple courts and on multiple tracks, and I think the Court will benefit from a consolidated response to these motions to the extent that those arguments can be consolidated.

So that will -- So that -- that means I need to decide this issue of who lead counsel is for the indirect purchasers

much -- promptly, and then they'll be expected to file the consolidated complaint, and it sounds like that will trigger then the duty of the defendants to file their motions to dismiss or otherwise respond to the complaint.

Any -- Anything else then?

MR. CONLEY: Judge, this is -- Judge, this is Dan Conley. There is one issue relating to personal jurisdiction. Ed Duffy of Baker Botts and I represent five different defendants -- actually six, I guess -- who we don't believe were subject to the jurisdiction of the original courts. They don't have enough specific contacts, so it's our intention to bring a motion to dismiss based on lack of personal jurisdiction to the extent any of the claims are brought outside of the districts of New York and Delaware, and we are happy to brief that in front of Your Honor or in front of the MDL panel if you think that makes more sense.

THE COURT: I'm not sure if the MDL panel would look at something like that? Is that typically how it's done? I haven't had that issue surface in the couple of MDL's I've had previously.

UNKNOWN SPEAKER: And, Your Honor, this is -- Go ahead.

MR. CONLEY: No, go ahead.

UNKNOWN SPEAKER: Yeah, I was going to say, Your Honor, I've seen it done by the MDL courts typically, so my

understanding it would be Your Honor that would resolve those motions. I would point the Court to the real page MDL just for procedurally how similar personal jurisdiction objections were -- were sorted through.

THE COURT: Okay. Well, go ahead and file your appropriate motions, and we'll resolve those as the case goes on, and if it's -- if I need to refer it to the MDL, I can do that.

I do want to address before I go back to you, there are five outstanding motions, I think, and I think to the large extent they're now moot because we've transferred cases to this MDL, so they're -- I think this is 26-CV-572, there was -- that's City of Revere versus AIP, and all, so docket 93, which is a motion to transfer to the Eastern District, that's been taken care of, so that motion can be terminated.

There's an emergency motion for stay in the same case, 104. All the deadlines previously entered in that case have been vacated, or are essentially vacated, so that motion can be terminated.

And City of Chelsea versus Fire Apparatus Manufacturers Association and all, this is 26-CV-573. Docket number 32 is a motion to transfer the case. That's already been taken.

Another motion for stay is document -- docket number 54, so that's resolved.

And then finally in People of the State of California

versus REV, and all, docket number 60 is a joinder and ex parte application for extension of time, and we're setting new dates, so that's -- that can be terminated as well.

Anything else on -- on what we've -- on the plan we're going forward on from here?

MR. SCHAR: Your Honor, Reid Schar --

MS. CASTILLO: Your Honor, just one clarifying question.

THE COURT: Go ahead and identify yourself.

MS. CASTILLO: Your Honor, Elizabeth Castillo again. Just one clarifying question on the leadership application for the indirect purchaser plaintiffs. I have in my notes that you said you wanted submissions by the end of this week and also by the end of next week, so I just want to confirm whether it was Friday, May 15th, or Friday, May 22nd, that you were contemplating receiving these motions?

THE COURT: Yeah. I -- I think I was thinking of, you had said you will get a motion in -- your motion for appointment by the end of this week, but I think given the discussion, let's keep it til the end of next week. So the 22nd -- 22nd would be when I expect those things.

MR. SCHAR: Your Honor, it's Reid Schar again on behalf of defendants.

In the form of a housekeeping, which I think you were just going through in terms of deadlines, there are some additional

response deadlines that have been set by transferor courts in several more cases that are approaching, and then, you know, there's a very significant number of defendants in a -- the City of Fullerton case, which are [indiscernible] dealers which will have dates coming up, you know, once they're served.

I -- My thought was maybe we could -- if Your Honor was amenable to simply entering an order vacating all remaining response deadlines in anticipation of the forthcoming consolidated claims, that might be helpful so you don't -- are not inundated with a series of motions to, you know, stay various deadlines that continue to come up because they're kind of automatically entered into -- in the transferor courts.

THE COURT: Yeah. I think that's kind of implicit in the whole creation of an MDL, so I'll -- I'll express -- expressly state that all motion deadlines in the cases that have been reassigned are vacated in light of the schedule that we're entering today -- or that I've -- the schedule that will result from this proceeding.

MR. SCHAR: Thank you, Your Honor.

THE COURT: Any other housekeeping matters or other questions?

MR. FLANNERY: No, Your Honor.

THE COURT: Okay. Well, we'll look for those -- that motion for appointment of lead counsel and the remaining track and go from there.

Thank you all then for participation and your work in preparation for this conference. I -- If you have suggestions as who how we can handle it more expeditiously or -- and with greater clarity, let me know. This is a -- I think a record for the number of attorneys we've had on one call, but I appreciate your cooperation and your -- the manner in which you've conducted yourselves.

So if nothing else, then we'll conclude the call and proceed from there. Thank you all.

MR. FLANNERY: Thank you, Your Honor.

MS. SIMONSEN: Thank you, Your Honor.

MULTIPLE SPEAKERS: Thank you. Thank you, Your Honor.

(At 10:08 a.m. the hearing ended.)

C E R T I F I C A T E

I, THOMAS A. MALKIEWICZ, RPR, RMR, CRR, an Official Court Reporter for the United States District Court for the Eastern District of Wisconsin, do hereby certify that the foregoing is a true and correct transcription of the audio file provided in the aforementioned matter to the best of my skill and ability.

Dated this 19th day of May, 2026.
Milwaukee, Wisconsin.

Thomas A. Malkiewicz, RPR, RMR, CRR
United States Official Court Reporter
517 East Wisconsin Avenue, Room 236
Milwaukee, WI 53202

Thomas_Malkiewicz@wied.uscourts.gov

ELECTRONICALLY SIGNED BY THOMAS A. MALKIEWICZ
Official U.S. Reporter, RPR, RMR, CRR